RECONTRUST LEGAL
RECEIVED
JAN 06 2014

NO. 429-0009-2014

Reese
11-0129699
1851 07692
SD 1-7-14
(TX)

| | | |
|---|---|---|
| CTT LAND TRUST, Plaintiff, | § | IN THE DISTRICT COURT In person |
| V. | § § | IN THE 429 JUDICIAL DISTRICT |
| BANK OF AMERICA, N.A. SUCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP, RECONTRUST COMPANY, N.A. AND BANK OF NEW YORK MELLON Defendants. | § § § § § § § § § | OF COLLIN COUNTY, TEXAS |

FILED 14 JAN -6 AM 9:43
ANDREA STROH THOMPSON
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY [signature] DEPUTY

## ORIGINAL PETITION FOR FRAUDULENT TRANSFER ACTION, TRESPASS TO TRY TITLE AND IN THE ALTERNATIVE FOR DECLARATORY JUDGMENT

1. Discovery Level. Discovery in this case is intended to be conducted under Level 2 of rule 190 of the Texas Rules of Civil Procedure.

2. Parties.

   a. Plaintiff, CTT Land Trust brings this suit as Owner of the property. Plaintiff is represented by Craig Tinsley as Trustee for the Trust and is a resident of Collin County, Texas at 4308 Springhill Estates Drive, Parker, Texas 75002.

   b. Defendant, Bank of New York Mellon shows to be a foreign Corporate registered with the Texas Secretary of State, showing that the registered agent to service of process is Stephen B. Wells, One Wall Street, New York, New York 10005. Bank of New York Mellon is being served based on notice sent to "owner of property" on March 06, 2012, which stated that Bank of New York Mellon was the

Mortgagee, and the Trustee for the Certificate holders of CWALT, Inc. Alternative Loan Trust 2006-21 CB, Mortgage Pass - Through Certificates, Series 2006-21CB. This notice apparently is an attempt to notify the owner that New York Mellon sold the property to a group of investors as a security, along with numerous other properties. If this is a correct notice, then Bank of America N.A. And Recon Trust who are attempting to conduct a "foreclosure sale" have no ownership interest in the property at all, with New York Mellon having paid all mortgage indebtedness through the sale of securities using this property as collateral for the sale of said securities.

 c. Defendant Recon Trust Company, N.A. is a company, principal office located at 2380 Performance Drive, Richardson, Texas 75082. Recon Trust is not registered with the Texas Secretary of State although it shows to have reserved the name on March 5, 2007 and the reservation has now expired.

 d. Defendant Bank of America N.A. (Bank of America National Association) is registered with the Texas Secretary of State as a Charlotte, North Carolina corporate entity and shows a registered agent for service of process of CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas, where service may be made.

3. Jurisdiction. This court has jurisdiction over the parties because Defendants are conduction business in the State of Texas and purport to own the property the subject of this suit which is located in Collin, County, Texas.

4. Ownership. Based on Records filed with Collin, County, Texas as well as the information obtained from various sources in an attempt to determine ownership of the property, on information and belief, Bank of America N.A. Is claiming to have obtained the loan on the property. The means and method of obtaining such loan is unknown as there does not appear to be any records in the Collin County Deed Records showing tranfers of ownership, change in Trustee, or assignment of interest in the property to defendants. It is believed, based on information and belief, that Bank of New York Mellon became involved by setting up a security comprised of a number of mortgages, including the mortgage on the property at issue. These "packages" of securities were sold to investors who purchased an interest in multiple mortgages on multiple properties, meaning that the original loan on which the Deed of Trust was based was paid in full and the property was sold to investors as a security which was packaged with numerous other mortgages on other properties making the holder of the "note" in this case difficult if not impossible to determine. These investors purchased properties and the loans were paid in full. That essentially means that the Deed of Trust was based on a mortgage that had been paid in full and the property ownership was turned over to an investment group or group of investors. Bank of America, N.A. Apparently seeks to act on behalf of these investors with the "proof" of its authority being an assignment from "MERS" (Mortgage Electronic Registration Systems, Inc., a bank owned facility used to transfer mortgages in order to avoid the necessity of paying filing fees to the clerks of the counties in which the properties are being transferred.) the basis of such assignment being unknown, unfiled,and not located as of the date of the filing of this lawsuit and in addition would appear to be based on a Deed of Trust for a note which was already paid in full.

Essentially, Plaintiff seeks to determine the ownership of the property, if a lien is genuinely outstanding on the property and if so, what needs to be done to pay such lien so that he can obtain clear title to the property. The true ownership of this property at this time can only be traced to the CTT Land Trust as that is the entity which has the most recent deed. Any lien remaining on the property has been the source of an unsuccessful search trying to trace what the deed records reflect as a lien held by Primelending, A Plainscapital Company. The efforts to obtain the information concerning the disposition of this lien have been confused by a claim that Countrywide Home Loans Servicing, LP, was taken by BAC Home Loans Servicing LP which was succeeded by Bank of America N.A. The involvement of Primelending has, to date, been undetermined, however the attempt by Bank of America, through Recon Trust to foreclose on the property does not, at this time, appear to be supported by sufficient records to make a non -judicial foreclosure a legal action while a deed to Plaintiff exists and while a lien to Primelending shows to be outstanding and of record in the deed records of Collin County.

Plantiff seeks an order stopping any foreclosure sale of any kind until the lawful holder in due course of any lien can be established to the degree of certainty necessary for a non judicial foreclosure and to determine the rights of the parties as set out below.

5. Declaratory Judgment. Plaintiff seeks a determination from the court as to who owns the property, whether there is an enforceable deed of trust and if there is, to whom payment should be made on any note that supports such deed of trust. Plaintiff further seeks a determination from the court as to the validity of any claim by Bank of America, N.A. As well as the validity of any claim by Primelending. Further Plaintiff seeks a determination from the court as to the ability of Mortgage Electronic Registration

Systems, Inc., to transfer by assignment any interest in the property described above when the deed records for Collin County do not reflect any Successor and/or Assign to the Deed of Trust. Finally Plaintiff seeks a determination by the court as to his ownership rights, any amounts of money owed by any form of "note" whether protected or not protected by a Deed of Trust, and what ownership interest any other person or entity holds which is adverse to Plaintiff's claim of ownership.

6. False Claim. Based on records on file with the Collin County Clerk, Plaintiff finds nothing to indicate that Defendant has a claim of interest in the property the subject of this suit, other than a purported assignment generated by MERS a corporate entity owned by banks for their use, which essentially allows the banks to generate their own documents to assign anything at any time. Int his case they have assigned an invalid Deed of Trust to a bank acting as a trustee for an investment firm who acts as the trustee for investors from which they obtain funds to make investments in mortgage packages and on which there is nothing that can be located by Plaintiff to document that any such arrangement exists. At the bare minimum, Defendants should be required to produce the documentation to show that they or one of them individually actually holds an ownership interest sufficient to justify a non judicial foreclosure, and that such interest has been properly documented in the records of Collin County, where the property is located.

7. Trespass to Try Title Pursuant to Texas Property Code Section 22.001 Plaintiff seeks to have the Court make a determination that Bank of America N.A., has no right, title, interest, or claim to ownership of any type in the property located 1409 Harvest Glen Drive, Plano, Texas 75023, and further seeks to have the Court issue its order providing Plaintiff with the full and complete clear title to said property, finding

that nay purported "assignment" which was nor recorded in the Deed Records of Collin County was made at a time when the assigning party held no right, title, or interest in the property the subject of this suit and no right to assign to someone else any interest is said property. On information and belief, in this case, a group of investors who have paid for the mortgage in full may have a claim against someone as they have paid the mortgage for the property. The issue is whether they have an unsecured note against Mary Jane Rorick, Steven Ray Reese and Catherine Louise Reese, 1409 Harvest Glen Drive, Plano, Collin, County, Texas Land Trust, or Plaintiff, against MERS, against the securities broker, or against person or persons selling the securities which contained the mortgage(s) in this case believed to be Bank of New York Mellon, or even against Bank of America N.A., depending on the court's determination of the lawfulness of the manner in which the transfer of a property that has been combined with numerous other properties as a security and then being sold in a package with nothing filed in the County Deed Records to demonstrate such action.

    8.    Alternative Relief of a Declaratory Judgment.    Should the Court find that any Defendant has any claim of right, title, or interest to said property, then there exists a genuine controversy between the parties herein that would be terminated by the granting of declaratory judgment. Plaintiff therefore requests that declaratory judgement be entered as follows:

> That any claimed agreement or assignment of agreement between any person or entity and any Defendant and any instruments evidencing such agreements are null and void and finding that Plaintiff has full, complete, and clear title to said property.

This request is based on the history of the securitization of mortgages which Plaintiff has

been able to investigate with the following findings:

    A.    By the use of "assignments" an avoiding recording of property transfers, property could be foreclosed by default, sold and transferred without any party in interest having ever come to Court and with out the name of the "Trust", or owners of the mortgage loan, ever having been revealed. Many times the Servicer will fraudulently keep the proceeds of the foreclosure sale under the terms of a pooling and Servicing Agreement a the "Trust" no longer exists or has been paid off. The Court and the property owner will never know that property was literally stolen.

    B.    After the property is disposed of in foreclosure, the ral owners of the mortgage loan are still free to come to Court and claim the mortgage loan for a second time. These parties ho may actually be owed money on the loan are now also victims of the illegal foreclosure. The purchaser of the property in foreclosure has a bogus and clouded title, as well as all other unsuspecting buyers down the line. Title Insurance would be impossible to write on the property.

    C.    The "Trusts" coming to Court are actually Mortgage Backed Securities ("MBS"). The Servicer may be merely an administrative entity which collects the mortgage payments an escrow funds. The MBS have signed themselves up under oath with the Securities and Exchange Commission, ("SEC") and Internal Revenue Service ("IRS") as mortgage asset "pass through" entities wherein they can never own the mortgage loan assets in the MBS. This allows them to qualify as a Real Estate Investment Conduit

("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT"). As long as the MBS is qualified REMIC, no income tax will be charged to MBS.

D. Although the "Trust" listed may be registered with the SEC and the IRS as a REMIC, more often than it is not properly registered in any state of the union as a corporation, Business Trust, or any other type of corporate entity. Therefore, the REMIC does not legally exist for the purposes of capacity for filing a lawsuit in any State. ( Recon Trust is not a company registered with the Texas Secretary of State and does not appear to have any legal standing as a valid business entity very similar to what is described here).

E. REMICS were newly invented in 1987 as a tax avoidance measure by Investment Banks. To file as a REMIC, and in order to avoid 100% taxation by the IRS, a MBS REMIC could not engage in any prohibited action. The "Trustee" can't won the assets of the REMIC. A REMIC Trustee could never claim it owned a mortgage loan. It can never be the owner of a mortgage loan.

F. Important to the issue presented with this particular action, is the fact that in order to keep its tax status and to find the "Trust" and legally collect money from investors, who bought into the REMIC, the "Trustee" or the properly named, Custodian of the REMIC had to have possession of ALL the original blue ink Promissory Notes and original allonges and assignments of the Note, showing a complete paper chain of title. The "Trustee"or "Custodian" must have the mortgages recorded in the investors name as beneficiary of a

MBS in the year the MBS closed. Every mortgage in the MBS should have been publicly recorded in the county where the property was located with a mortgage in the name similar to " 2006 ABC REMIC Trust on behalf of the beneficiaries of the 2006 REMIC Trust." The mortgages in referenced example would all have had to been publicly recovered in the year 2006.

G. The "Trusts" were never set up or registered as Trusts. The Promissory Notes were never obtained an the mortgages never obtained and recorded. (Such as the listed "Alternative Loan Trust 2006-21CB, Mortgage Passthrough Certificates, Series 2006-21CB listed by New York Mellon Bank in the notice served on the property owner on March 6, 2012).

H. The "Trust" engaged in a plethora of "prohibited activities" and sold the investors certificates and bonds with phantom mortgage backed assets. There are now numerous Class actions filed by the beneficiaries (owners/investors) of the "Trusts" against entities who sold the investments as REMIC based on a bogus prospectus.

I. In the above, even if the servicer who is foreclosing on behalf of the Trustee produces a copy of a note, or even an alleged original, the mortgage loan was not conveyed in to the turst under the requirements of the prospectus for the trust or the REMIC requirements of the IRS.

J. The end result would be that the required MBS asset, or any part thereof ( mortgage note or security interest), would not have been legallly transferred to the trust to allow the trust to ever be considered a "holder" of a

mortgage loan. Niether the "Trust" or Servicer would be entitled to bring a foreclosure or declaratory action. The Trust will never have standing or be a real party in interest. They will never be the proper party to appear before the Court.

K. The transfer of mortgage loans into the trust after the "cutoff date", destroys the trust's REMIC tax exempt status, and these "Trusts" ( and potentially the financial entities who create them) would owe millions of dollars in back taxes being taxed at 100% rate.

L. Subsequent to the "cut-off" date listed in thee prospectus, whereby the mortgage notes and security for these notes had to be identified, and Note and Mortgages transferred, and thereafter, the pool is permanently closed to future transfers of mortgage assets.

M. A Mortgage loan which was recorded in the name of Primelending but which apparently is now claimed, based on a Notice of Substitute Trustee's Sale issued in 2011, to have been obtained by an "original Mortgagee of Mortgage Electronic Registration Systems, Inc." and/or for which they are attempting through an unrecorded purported Mortgage Assignment to be transferred into a REMIC after that REMIC's "cut off" and "closing dates".

N. In Plaintiff's case, the lack of acquisition of the mortgage loan violates the prospectus presented to the investors and the IRS REMIC requirements.

O. To the Judges throughout the United States and the homeowners, the foreclosing party, a servicing company or "trust" entity appears to be a bank or lender. This falsity is due to its name and style of the case. They are not

banks or lenders to the loan. They are not beneficiaries under the loan. They do not possess a Mortgage in the property. They will never have a right to possess a mortgage in the property.

P. Homeowners were never informed of the nature of the scheme. They were deliberately induced into signing a Negotiable Instrument which was never intended as such, but was collateral for a MBS.

Q. The failure to disclose the identity of the true lender at closing was also a "material disclosure"; the nature of which would make the contract voidable.

R. Investments were made in MBS, based on a prospectus, which had to be filed with the SEC. The MBS would always be rated "AAA" by Moody's or Standard and Poors in order to invoke a sense of confidence for the investors. The rating agencies were hired and compensated by the underwriter/salesman of the MBS. The rating Agencies are currently under investigation by the Department of Justice for thier role in the financial meltdown.

S. The Servicers worked to collect money for the MBS from the individual loans and collected and distributed escrow funds. The "Trustees" were custodians, akin to administrators.

T. The Trust would include equivalent language egarding the handling of these required Assignments: "Assignment of the Mortgage Loans to the nominee will not be recorded in any jurisdiction, but will be delivered to the Trustee in recordable form, so they can be recorded in the even recordation is necessary in connection with the servicing of a Mortgage Loan".

|   | This publicly recorded provision to deliberately keep transfers out of the public record, violates the Mortgage recording Statute of almost every State in the Union. |
|---|---|
| U. | The MBS Trust created for itself a situation wherein it had no legally recognizable interest in the loans fo rthe benefit of the investors. The investors were invested in nothing. The MBS possessed nothing on the date the REMIC closed and perpetrated a fraud on the investors and the American taxpayer trough its fraudulent qualifications as a REMIC with the SEC. |
| V. | No bank, lending institute or "Trustee" ever pledged or put up the money for the Homeowner's loan. The foreclosing entities had no pecuniary, ownership stake or beneficial interest in the homeowner's loan. |
| W. | Any statement that the foreclosing Servicer "holds" the original Promissory Note is untrue. The majority of the securitized Notes no longer exist, having been deliberately destroyed or disposed. |
| X. | When the scheme was originated and implemented in mass, what was not planned for was the immediate 2008 massive real estate market collapse and the thousands of voluntary and involuntary defaults and TILA loan rescissions of mortgage loans. At the same time, the fair market value of housing dropped by as much as 50% in some parts of the United States. |
| Y. | No legal plan was in place for such a wide spread loss of the assets. No legal plan was ever in place to deal with the fact that the original Prospectus to the shareholder/investors was a myth. No legal plan was ever in place for the |

shareholder/investors to come to Court in an attempt to collect o the assets of the MBS they purchased.

Z. In order to collect on the mortgage loans divest Americans of their homes, Servicers and "Trustees" have had to mislead the Courts as to their standing in foreclosure. They have had to create, forge and fabricate phony documents in order to obtain an Order of Sale in Foreclosure.

AA. In a foreclosure, the MBS/Trustee claims to be acting on behalf of the MBS/Trust and claims that is has acquired the loan from the originator. The multiple transfers of title of the mortgage loan in between the originator and the MBS/Trust is simply ignored as it can never be proved or shown to the Court. When a Servicer is foreclosing, an additional break in the chain occurs as the Servicer is often never the mortgagee of record under a Mortgage Assignment and has absolutely no legal tie to the investors in the MBS. The Servicer can never hold transfer of Mortgage in the property on behalf of the investors.

BB. In the totally fraudulent Affidavits and "assignments" as to loan ownership, the following irregularities usually appeared; The assignor, MERS, had the same address as the assignee, they were executed by a person having a title of "Vice President" or "Assistant Secretary of MERS", and the document would have an "effective date" well prior to the date upon which it was executed, so as to retroactively give standing to plaintiff of the foreclosure.

CC. Persons signing these assignments as "Assistant Secretary of MERS" in actuality were never officers or employees of MERS. Rather, they are

employees of the foreclosing "Servicer" or the Servicer's's Law Firm.

DD. The preparation, filing, and prosecution of the complaint to foreclose and to enforce loan without any documents ere each predicate acts in the pattern of racketeering activity.

EE. In furtherance of the MERS enterprise. The actions could not have been brough by the Defendants without the MERS artifice and the ability to generate any necessary "assignments" which flow from it.

FF. As with MERS model itself, the "assignments" were meaningless shells designed to fool the judiciary and ease the burden upon the unknown real parties in interest. The practice of "non-documentation" can be seen as a common thread weaving all of the complained of conduct into an undeniable tapestry of a criminal enterprise proscribed by Federal RICO statues.

GG. The alleged notes in question, started life as negotiable instruments. They were similar to a check. The negotiation and enforceability of both note and checks governed by the Uniform Commercial Code. To enforce a negotiable instrument, a person must be a holder of the note. The foreclosing plaintiff is not in possession of the original negotiable instrument with any legally binding original endorsement.

HH. If the party, at a later date, attempts to claim that the original documentation was somehow "lost", the Note will never be enforceable , as made obvious by official comments to the UC, X signs a document conveying all of X's right, title , and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the

instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs until it is delivered to Y.

II. Based on the record in Plantiff's case, the note and the mortgage appear to have been bifurcated at inception and were and remain unenforceable as a Secured Transaction under the Uniform Commercial Code. The most foreclosing Defendant could ever be i an unsecured creditor.

JJ. Upon information and belief, the Note was "securitized", was paid off in excess of the principal balance and is no longer enforceable as a Secured Negotiable Instrument.

KK. If an enforceable transaction can be proven, the Defendants were deceived into such transaction without notice that they were encumbering the property as a "Security" under the Rules and Regulations of the securities and Exchange Commission.

LL. The Defendants do not hold, bear or own the original Note, are not a Mortgagee and have no legally enforceable interest in the loan or standing to file a Foreclosure Action.

MM. There is no assignment of the promissory Note to the foreclosing defendants.

NN. Any alleged Allonge to Promissory Note, Assignment of the Mortgage are believed to be forged instruments. Those forged instruments have been uttered or published into public record. Mortgage Fraud and Forgery violations have occurred.

9. Attorney's Fees. Pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code, And/or Tex. Bus. & Com. Code Ann. Sec 24.013, request is made for all costs and reasonable and necessary attorney's fees incurred by Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just.

10. Plaintiff requests a jury trial.

11. Prayer. Plaintiff prays that -

    a. Defendants be cited to appear and answer.

    b. The Court enter judgment that Defendants have no claim of interest in the property of this suit;

    c. The Court enter its decree setting aside and canceling the General Warranty Deed with Vendor's Lien in favor of Third Party on July 14, 2008 as having been paid in full and awarding a clear title to Plaintiff.

    d. Plaintiff be granted judgment for attorney's fees;

    e. In the alternative, that, declaratory judgment be granted as requested herein and Plaintiff be awarded costs and reasonable and necessary attorney's fees

    f. Plaintiff be granted judgment for attorney fees through appeal

    g. Plaintiff be granted judgment for all costs of court; and

    h. Plaintiff be granted all further relief to which Plaintiff may be entitled.

Respectfully submitted,

By: Craig Tinsley, Trustee
By: _____
4308 Springhill Estates Drive
Parker, Texas 75002
972-836-3193